PEOPLE, PLAINTIFF AND APPELLEE, *v.* LÓPEZ, DEFENDANT AND APPELLANT.

APPEAL from the District Court of Humacao in a Prosecution for Mayhem.

No. 2064.—Decided June 14, 1923.

MAYHEM—LOSS OF VISION.—A person who deprives another of the loss of his vision in one eye as a result of an unlawful and malicious assault is guilty of the crime of mayhem defined in section 212 of the Penal Code.

The facts are stated in the opinion.

*Messrs. C. García de la Noceda* and *R. Martínez Nadal* for the appellant.

*Mr. José E. Figueras, Fiscal,* for the appellee.

MR. JUSTICE HUTCHISON delivered the opinion of the court.

Manuel López Cepero was convicted of mayhem.

The indictment charges a willful and malicious assault and battery whereby Eladio Burgos was deprived of his vision in the left eye as the permanent result of a severe blow from a blunt instrument.

The only question raised in the brief goes to the sufficiency of the evidence to support the verdict and judgment.

The theory of appellant seems to be that notwithstanding the testimony of the prosecuting witness as to the total blindness in the left eye at the time of the trial, this fact must be shown conclusively by expert testimony, and that

the testimony of the oculist put upon the stand by the district attorney is not conclusive either upon this point, or as to the proximate cause of the blindness, or as to the alleged permanency thereof.

In the oral argument it was suggested that the mere loss of sight is not mayhem within the meaning of the Penal Code. It is fair to add that this intimation was made in more or less tentative form and was coupled with the statement that counsel had not had time to investigate the matter.

If it were incumbent upon this court to conduct an independent investigation along the line thus indicated, such inquiry might come to an abrupt conclusion without any very apparent impropriety upon a careful comparison of the Spanish version of section 212 of the Penal Code with the original English text. The one speaks of "*Toda persona que* \* \* \* *sacare un ojo,*" the other of "Every person who \* \* \* puts out an eye."

While we need not and do not hold that "the mere disfigurement of an eye would not amount to mayhem," yet the answer to so much of appellant's argument as is not based upon the error of translation last above mentioned may be found in *People* v. *Núñez,* 190 Pacific, 486, where a California District Court of Appeals said:

"We agree with counsel for the defendant that under the statute the mere disfigurement of an eye would not amount to mayhem unless such disfigurement resulted in rendering the eye useless; but we think the jury were warranted in finding, as their verdict implies that they did find, that the defendant by the blow he delivered in and upon the face of the prosecuting witness 'put out' the eye of the latter."

Then, after quoting from the testimony of an oculist, the court goes on to say:

"There can be no manner of doubt that the foregoing testimony, taken alone, unmistakably shows that the complaining

witness' eye was put out. If all that the injured party could do with the eye was, as the doctor testified, merely to distinguish lightness from darkness or perceive a motion or movement of some sort made immediately before the eye, the eye was certainly rendered perfectly useless to. its possessor. If both eyes were so afflicted, it is very clear that the complaining witness would practically be blind. What the statute obviously means by the expression or phrase, 'put out the eye' is that the eye has been injured to such an extent that its possessor cannot use it for the ordinary and usual practical purposes of life.''

In the case at bar the oculist who had examined the injured eye some two weeks after the assault and eight months before the trial stated in substance that he found incipient atrophy of the optic nerve, well defined; that the patient could see only objects in bulk at twenty feet; that witness told him he would probably lose his sight in that eye; that he would become totally blind in that eye; that Burgos was suffering from progressive atrophy because all atrophies are progressive; that during the period that had elapsed between that date and the time of the trial it was possible that Burgos had lost the sight of that eye; that on the day of the examination he could distinguish objects in bulk at twenty feet; that witness told the patient that after a time he would lose the sight in that eye, although witness hesitated somewhat before. telling him this because it is always unpleasant to say to a patient "your case is hopeless;" that it is easier to tell him "probably you are going to lose your vision" and permit him to go on until he is convinced of this; that from the date of the examination to the day of the trial time enough had elapsed, witness believed, for a total loss of vision to have occurred; that witness could not say exactly that if the patient had been attended by a specialist immediately, his vision would have been lost because with treatment perhaps some degree

of vision might have been retained; that witness was unable to state categorically whether Burgos could see or not with that eye at the time of the trial; that Burgos might have had some other affection in that eye unknown to witness, who had had no opportunity to examine the optic nerve before the blow was received, but that the blow was enough to have produced the atrophy.

Although the prosecuting witness did not say in so many words that his left eye had given him no trouble before the time of the assault, his testimony as a whole leaves little or no room for doubt upon this point. The possibility of a previous affection unknown to the oculist and the possibility of such relief as might have resulted from an earlier visit to the oculist are both too remote to require serious consideration.

The statement of the prosecuting witness as to the total blindness in the left eye was quite consistent with, and was made most plausible, if not directly corroborated, by the testimony of the oculist. The jury, if satisfied that Burgos had told the truth, were justified in finding defendant guilty of mayhem.

As to whether or not defendant struck the blow that deprived the prosecuting witness of his vision, a question urged with much earnestness in the oral argument, we are content to say that a careful examination of all the testimony discloses no sufficient ground for a reversal.

The judgment appealed from must be

*Affirmed.*

Chief Justice Del Toro and Justices Wolf, Aldrey and Franco Soto concurred.